| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------X<br>In re:<br><br>MARK ALLEN KALISCH a/k/a<br>MARCO KALISCH,<br><br>      Debtor.<br>-------------------------------------------------------X<br>MARK ALLEN KALISCH,<br><br>      Plaintiff,<br><br>v.<br><br>MAPLE TRADE FINANCE<br>CORPORATION,<br><br>      Defendant.<br>-------------------------------------------------------X | **NOT FOR PUBLICATION**<br><br><br><br>Chapter 11<br>Case No. 06-B-10706 (JMP)<br><br><br><br><br><br><br><br>Adv. Pro. No. 06-01717 (JMP) |

## OPINION AND ORDER DENYING WITHOUT PREJUDICE
## DEFENDANT'S MOTION TO DISMISS

FOLKENFLIK & McGERITY
Special Litigation Counsel for Mark Allen Kalisch
1500 Broadway, 21st Floor
New York, New York 10036

    Max Folkenflik, Esq.


BACKENROTH FRANKEL & KRINSKY, LLP
Counsel for Maple Trade Finance Corporation
489 Fifth Avenue
New York, New York 10017

    Mark A. Frankel, Esq.

**JAMES M. PECK**
**UNITED STATES BANKRUPTCY JUDGE**

Maple Trade Finance Corporation ("Maple Trade") has moved to dismiss the complaint filed by the individual Chapter 11 debtor Mark Allen Kalisch ("Kalisch" or "Debtor") under Fed. R. Civ. P. 12(b)(6), incorporated by Fed. R. Bankr. P. 7012, seeking (i) equitable subordination of Maple Trade's claim against the Debtor, (ii) a declaration that Maple Trade's lien on certain of the Debtor's property is void or voidable and (iii) a declaration that the loan agreement between Maple Trade and a company solely owned and controlled by Kalisch is unenforceable due to Maple Trade's alleged "unclean hands" (the "Complaint").

The Complaint alleges that Maple Trade should forfeit its rights as a secured creditor because it advanced funds to the Debtor knowing that the proceeds would be used in furtherance of a scheme to obtain diamonds from Brazil in violation of applicable Brazilian and United States law. The plot, as alleged in the Complaint, involves wrongdoing that leads to tragic and horrific consequences – the bribery of Brazilian officials and the illegal mining for diamonds on a native Indian reservation resulting in multiple arrests by the Brazilian government and the massacre of twenty-nine people. The Complaint, while careful not to make any plainly worded admission that the Debtor actually violated any laws, portrays a brazen scheme in which the Debtor was a central actor and claims that Maple Trade, as a wrongdoer that knowingly helped to finance the dirty operation, should not be permitted to recover as a secured creditor.

Maple Trade, without admitting any wrongdoing, moves to dismiss the Complaint on the grounds of *in pari delicto,* arguing that if the Debtor's contentions are all true, his own conspicuous misconduct must bar any right to relief and, alternatively, that the Debtor has failed

to admit an illegal act, and so the underlying premise that the loan proceeds were intended to finance an illegal venture is not supported by allegations in the Complaint.

For reasons discussed more fully below, the Court denies the motion to dismiss to allow for the development of the factual predicates of the *in pari delicto* defense and a more thoughtful assessment and balancing of the relative fault, if any, of the parties to this alleged criminal conspiracy. Although the *in pari delicto* doctrine appears to have been properly invoked by Maple Trade and could be the basis for granting a motion to dismiss under the circumstances presented here, the Court finds that dismissal at this early stage of the litigation is not in the interest of justice and efficient case administration and that it would be preferable for the litigation to continue and for *in pari delicto* to be raised as an affirmative defense.

The Debtor is not seeking a monetary recovery from Maple Trade but instead wants a declaration that would bar recovery against him by Maple Trade. The Complaint, filed a number of weeks prior to the filing by Maple Trade of its proof of claim, functions in practical terms as a preemptive claim objection in which the Debtor as plaintiff alleges that Maple Trade, due to its participation in the plot, should be deprived of any meaningful recovery with respect to its secured claim. Thus, both plaintiff and defendant are attempting in this litigation to smear one another without admitting culpability –a delicate task to say the least – and to interpose the doctrine of *in pari delicto* to the potential disadvantage of the other. This mutual finger pointing cannot be fairly resolved without first developing a factual record that will enable the Court to measure the relative degrees of fault of the parties.

**Jurisdiction**

The Court has subject matter jurisdiction under 28 U.S.C. §§1334(b) and 157(a) and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**Background**

The Debtor is engaged in importing diamonds through Marco Kalisch Imports ("Imports"), an entity that he owns and controls. In February 2004, Maple Trade made a $1.5 million commercial loan to Imports (the "Loan"), which was personally guaranteed by the Debtor and secured by his interest in 1900 shares of stock in 2 East 12th St. Owners Corp. (the "Coop") and the three proprietary leases for apartments appurtenant to those shares (the "Apartments").

According to the facts alleged in the Complaint, the Loan was intended to finance the mining of rough diamonds on the Cinta Larga Indian Reserve in Brazil (the "Diamond Venture"). The Debtor states in the Complaint that the Diamond Venture involved bribes to a "silent partner" who was a Brazilian official to facilitate the mining and importation of the diamonds, accomplished through transfers to a Brazilian corporation in which the official owned a one-third interest. The Debtor also alleges that these transfers were in violation of the United States Foreign Corrupt Practices Act of 1977, which generally prohibits U.S. firms from making corrupt payments to foreign officials for the purpose of obtaining or keeping business. 15 U.S.C. §§78dd-1, *et seq.*

According to the Complaint, payments made to Brazilian government officials were designed to secure governmental cooperation, but the scheme was unsuccessful. In March 2004, before any diamonds could be taken out of Brazil, the Brazilian government arrested fourteen people connected with the Diamond Venture, including Kalisch's silent partner and several agents of the Bureau of Indian Affairs. Kalisch asserts that a significant number of rough diamonds that had been mined through the Diamond Venture disappeared. Soon after the arrests, in April 2004, twenty-nine people were killed at the Cinta Larga Indian Reserve, which the Debtor alleges was in connection with the illegal importation of diamonds. The Complaint does not explain how or why these murders occurred.

After the failed Diamond Venture, Imports and Kalisch defaulted on the Loan. Maple Trade sought to foreclose on its collateral and scheduled a sale of the Apartments. Prior to the sale, on April 5, 2006, the Debtor filed a petition under chapter 11 of the Bankruptcy Code.[1] The Complaint was filed on September 6, 2006,[2] and the motion to dismiss was filed on October 10, 2006. Shortly thereafter on October 26, 2006, Maple Trade filed a proof of claim in the Debtor's

---

[1] Prior to Kalisch's chapter 11 filing, his wife, Mayra Diaz Kalisch, had attempted to enjoin the sale of the Apartments by filing a complaint against Maple Trade in the Supreme Court of New York County, alleging that Maple Trade could not foreclose because she had an agreement with the Debtor that the Apartments were owned by tenancy by the entirety and she had not consented to the pledge of the Apartments in favor of Maple Trade. In an attempt to memorialize this purported oral agreement, the Kalisch's, in their capacity as officers of the Coop, distributed new shares and leases to themselves as co-owners. On June 9, 2005, the New York Supreme Court issued a decision rejecting Mrs. Kalisch's arguments and denying her request for an injunction of the sale. On October 16, 2005, Mrs. Kalisch filed a petition for relief under chapter 13 of the Bankruptcy Code. Subsequently, the New York Appellate Division, First Department affirmed the Supreme Court's decision on December 29, 2005 finding that it had correctly held that Mrs. Kalisch was not a co-owner of the Apartments. The Supreme Court subsequently entered a default judgment in favor of Maple Trade and dismissed Mrs. Kalisch's complaint with prejudice. On appeal, the Appellate Division, First Department modified the Supreme Court order, directing that the complaint be dismissed without prejudice and clarifying that the dismissal did not have *res judicata* effect. *See Kalisch v. Maple Trade Finance*, 827 N.Y.S.2d 40, 41 (1st Dep't 2006).

[2] A few months later, Mrs. Kalisch also filed a complaint against Maple Trade in this Court on February 13, 2007, alleging similar facts as were alleged in the Complaint in this case. Because they have similar issues of fact, the Kalisch's respective adversary proceedings against Maple Trade were consolidated and the parties agreed on an initial discovery schedule by stipulation dated May 2, 2007, which was so ordered on May 14, 2007. *See* Docket No. 7.

bankruptcy case based on the default of Kalisch's personal guarantee of the Loan to Imports, asserting a $1,450,000 secured claim and $50,000 unsecured claim.

## Motion to Dismiss Standard

A complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) only if it appears that the plaintiff would not be entitled to relief even if it could prove the complaint's factual allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Harsco Corp. v. Segui*, 91 F.3d 337, 341 (2d Cir. 1996). The Court must accept as true all material facts alleged and draw all reasonable inferences in favor of the plaintiff. *Id.*; *Schuer v. Rhodes*, 416 U.S. 232, 236 (1974). Legal conclusions, deductions or opinions, however, do not have to be accepted as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In ruling on a motion to dismiss, the Court's role "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

A complaint can also be "dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense 'if the defense appears on the face of the complaint.'" *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)); *Knauer v. Jonathon Roberts Fin. Group, Inc.*, 348 F.3d 230, 236-38 (7th Cir. 2003) (affirming dismissal under Rule 12(b)(6) because pleadings showed suit was barred by *in pari delicto*); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004) ("The complaint also is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense, but the defense must clearly appear

on the face of the pleading."). Thus, if a complaint alleges facts that clearly indicate the existence of an affirmative defense, the Court may dismiss the claim pursuant to Rule 12(b)(6).

### *In Pari Delicto* Doctrine

Maple Trade has brought this motion to dismiss arguing that facts alleged by the Debtor in the Complaint establish the affirmative defense of *in pari delicto.* This doctrine derives from the Latin, *in pari delicto potior est conditio defendentis*: "'In case of equal or mutual fault…the position of the [defending] party…is the better one.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985) (quoting *Black's Law Dictionary* 711 (5th ed. 1979)). It is based on two premises: "courts should not mediate disputes between wrongdoers, and denying judicial relief to a wrongdoer deters illegal conduct." *Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 17 F.Supp.2d 275, 308 (S.D.N.Y. 1998) (quoting *Granite Partners, L.P. v. Primavera Familienstiftung,* 194 B.R. 318, 328 (Bankr. S.D.N.Y. 1996)). The doctrine is "rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *Pinter v. Dahl*, 486 U.S. 622, 632 (1988). Plaintiffs who are active and voluntary participants in cooperation with the defendants in the wrongful activity that is the subject of the suit are *in pari delicto. See id.* at 635-36.

Several courts have dismissed suits under Rule 12(b)(6) when they can determine from the face of the complaint that the defendant clearly has an *in pari delicto* affirmative defense. *E.g.*, *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (affirming dismissal of deepening insolvency claim on basis of *in pari delicto* doctrine); *Knauer*, 348 F.3d at 236-38.

Based on the papers submitted by both parties, it is premature to dismiss this adversary proceeding at this time on the basis of *in pari delicto*. *See Buckley v. O'Hanlon, et al.*, 2007 U.S. Dist. LEXIS 22211, at * 24-25 (D. Del. March 28, 2007) (denying motion to dismiss based on *in pari delicto* as premature because determination of whether defense would prevail required further development of facts). The atypical path to claim resolution taken by the Debtor in this case and the fact that the Debtor is challenging the proper characterization of a claim made by Maple Trade supports this conclusion. The Debtor has launched what is really a preemptive attack on claim validity. The Debtor filed the Complaint over a month before Maple Trade filed a proof of claim but has raised the very same kinds of arguments to be expected in objecting to the enforceability and priority of the claims evidenced by the Loan.

The Debtor has gone on offense but is really engaged in a maneuver that can best be viewed as defensive. Although the Complaint preceded the proof of claim, Maple Trade is still the party that is seeking to recover property from the Debtor relating to the Diamond Venture and the Debtor is the party who is taking steps to protect his property, arguing that Maple Trade should not be allowed to recover because of its complicity in an ugly deal that went tragically bad. The procedural posture is contorted. The Debtor, as plaintiff, is acting more like a defendant in trying to prevent a creditor from realizing on its secured claim. In applying the *in pari delicto* doctrine in such a setting, it is difficult to tell which one of the participants in this sordid story of alleged corruption is the aggressor and whether either or both should be denied judicial relief. This is a particularly difficult task in the absence of any facts other than the ones set forth in the Complaint.

Both the Debtor and Maple Trade have asserted that the other has engaged in misconduct that prohibits obtaining relief from this court. According to the doctrine of *in pari delicto*, if both parties are guilty of wrongdoing, this Court should not aid either: it should not adjudicate the status of Maple Trade's claim nor give the Debtor the relief it seeks. There is, however, a recognized exception to this principle. "[W]here the parties are not in equal fault as to the illegal element of the contract, or, to use the phrase of the maxim, are not *in pari delicto*, and where there are elements of public policy more outraged by the conduct of one than of the other, then relief in equity may be granted to the less guilty." *In re Sanborn*, 216 B.R. 697, 701 (Bankr. D. Mass. 1998) (internal citation omitted). At this early pleading stage of the adversary proceeding, the Court does not have enough information and is both unable to weigh the relative fault of the Debtor and Maple Trade and unable to determine if either can be viewed as "less guilty" than the other and, thus, potentially entitled to relief.

## Conclusion

In denying Maple Trade's motion to dismiss, the Court anticipates that the *in pari delicto* issues raised in that motion will be renewed by pleading an affirmative defense. The parties have already agreed to an approved discovery schedule under which discovery commenced on May 21, 2007. *See* fn. 2. Upon completion of discovery in accordance with this schedule, issues relating to the application of the *in pari delicto* doctrine to the particular facts of this case can be presented to the Court for decision by means of a motion for summary judgment or an evidentiary hearing. In either event, the Court expects to be in a position to assess relative culpability between the parties and the appropriate application of the *in pari delicto* doctrine after the material facts have been developed.

While it may have been possible, at least in theory, to grant the motion to dismiss, that would not end this controversy or advance the process of claim resolution.  Instead, it simply would result in a wasteful articulation of the same issues by different means.  The Debtor, no doubt, would either file an amended complaint or, more likely, prosecute a claim objection that would include counterclaims based on the very same theories of relief stated in the Complaint.  As a result, no party is benefited and no long-term purpose is served by granting the motion at this time.  The most expeditious procedure for weighing relative culpability is to permit the facts to be fully developed in the current litigation.  Accordingly, Maple Trade's motion to dismiss is denied without prejudice.

IT IS SO ORDERED.

Dated: New York, New York
May 30, 2007

           *s/ James M. Peck*
           HONORABLE JAMES M. PECK
           UNITED STATES BANKRUPTCY JUDGE